IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 7, 2014 Session

## THADDEUS JOHNSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**Nos. 03-00441, 03-00442      Glenn Ivy Wright, Judge**

_____

**No. W2014-00053-CCA-R3-PC  - Filed December 29, 2014**

_____

Petitioner, Thaddeus Johnson, was convicted of first degree murder and attempted first degree murder. For these crimes, he received a life sentence and a consecutive twenty-five year sentence. Petitioner timely filed a petition for post-conviction relief in which he alleged that he received ineffective assistance of counsel at trial and on appeal. The post-conviction court denied relief, finding that Petitioner failed to prove his claims by clear and convincing evidence. In this appeal, Petitioner challenges the dismissal of his petition and also alleges ineffective assistance at the post-conviction hearing. After reviewing the parties' briefs, the record, and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the petitioner, Thaddeus Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Amy Weirich, District Attorney General; David Zak and Rachel Russell, Assistant District Attorneys General, for the respondent, State of Tennessee.

## OPINION

_Factual and Procedural Background_

On April 7, 2005, a Shelby County jury found Petitioner guilty of the first degree murder of Montreal Graham during the attempted murder of Maurice Wooten, of which the

jury also found Petitioner guilty. The trial court sentenced Petitioner to life imprisonment for the murder and to a consecutive twenty-five year prison term for the attempted murder. This Court affirmed Petitioner's convictions and consecutive sentences on direct appeal. *State v. Thaddeus Johnson*, No. W2005-01600-CCA-R3-CD, 2006 WL 1816392, at *1 (Tenn. Crim. App. June 30, 2006), *perm. app. denied*, (Tenn. Nov. 20, 2006).

On February 14, 2005,[1] the trial court held a hearing on trial counsel's motion to withdraw. As grounds for the withdrawal, trial counsel explained:

> I've been seeing [Petitioner] curse me out and then he threaten[ed] me, your Honor. I don't think I can represent with any kind of zeal, your Honor. After that I just don't think I can give him what he deserves in a first degree murder case.

In response to questioning from the trial court, trial counsel clarified that the cursing was not "that big of a deal" but insisted that the threat was concerning.[2] Trial counsel again opined that he did not "have the zeal to represent [Petitioner]."

Petitioner admitted to cursing at trial counsel but denied ever threatening him. Petitioner told the trial court that trial counsel would not file the motion(s) that Petitioner requested and expressed his belief that, if Petitioner "asked [trial counsel] to file a motion . . . it shouldn't be no argument." Additionally, Petitioner declared that he "had to write the Board of Professional Responsibility to get [trial counsel] to come see [him] . . . ." When the trial court expressed concern that the allegations were merely a stall tactic by Petitioner, Petitioner told the trial court that he would not cooperate with his attorney. Petitioner further explained, "I don't feel like he's trying to help me. He's been on my case for awhile and the things he [has], I don't have." Trial counsel stated that he had reviewed all of their material and shown everything to Petitioner.

The trial court acknowledged that trial counsel was a "well-respected attorney [who knew] how to handle [that] situation" and also expressed its concern that no problems had previously arisen during the two years prior to trial. Ultimately, the trial court instructed Petitioner to cooperate with his trial counsel and denied the motion to withdraw. The trial

---

[1]It is unclear from the record exactly when the hearing was held in relation to the original trial date. Statements made by the trial court during the hearings for the motion to withdraw and the motion for new trial indicate that the motion to withdraw may have been brought on the morning that the trial was to begin on February 14, 2005. Nonetheless, the trial was eventually held on April 4th through April 7th of 2005.

[2]The record does not contain any factual description of the threat.

was later reset.

On July 7, 2005, during the hearing on Petitioner's motion for a new trial, Petitioner's trial counsel argued that the trial court's denial of the motion to withdraw adversely affected his performance at trial. Trial counsel stated that "it was a communication problem between [us], as well as . . . [Petitioner] threatened me," which in turn prevented trial counsel from providing zealous representation. Although trial counsel affirmed that he "fe[lt] that [he] did what was necessary to represent [Petitioner]," trial counsel also expressed doubt about whether he had actually represented Petitioner zealously.

The trial court rejected this argument by Petitioner as a justification for a new trial, explaining:

> [T]he Court's of the opinion, without hesitation, that [trial counsel] represented [Petitioner] the way he would if he had not a single problem with [Petitioner] because [trial counsel]'s a good lawyer and he put that aside as he said he would and he represented [Petitioner] in this case, and the Court got a commitment from [Petitioner] that he'd work with [trial counsel] at the trial.

However, the trial court relieved trial counsel from further representation on appeal in response to trial counsel's assertion that he was still having "problems" with Petitioner. Petitioner responded to the trial court that trial counsel "[had]n't been doing a good job."

After the direct appeal, Petitioner filed a pro se petition for post-conviction relief on July 9, 2007. An order appointing private counsel to represent Petitioner was entered on October 11, 2007. Petitioner filed an amended petition for post-conviction relief on April 8, 2011, alleging ineffective assistance of appellate and trial counsel.[3] The post-conviction court held an evidentiary hearing on September 5, 2013.[4]

---

[3]On May 31, 2013, while represented by appointed counsel, Petitioner filed a pro se Motion to Amend Petition for Post-Conviction Relief, claiming that the trial court's decision not to allow trial counsel to withdraw constituted a constitutional structural error. This motion was improper while Petitioner was simultaneously represented by counsel. *See State v. Cleo Henderson*, No. W2012-01480-CCA-R3-CD, 2013 WL 6157039, at *5 (Tenn. Crim. App. Nov. 21, 2013) (citing *Williams v. State*, 44 S.W.3d 464, 469 (Tenn. 2001)).

[4]The record reflects the first attorney appointed to this case withdrew on August 31, 2009, for health reasons. The second appointed attorney withdrew on December 9, 2009, due to a change in employment. An order substituting the third appointed attorney for retained counsel was entered on May 6, 2010. Petitioner's retained counsel was relieved on February 23, 2012, because of an unspecified conflict with Petitioner.

Before the hearing, post-conviction counsel informed the court that Petitioner was unsatisfied that post-conviction counsel had not produced some of the witnesses that Petitioner had requested. Post-conviction counsel stated that Petitioner gave her some phone numbers of family members and potential witnesses. Post-conviction counsel spoke with Petitioner's brother and sister but determined that they would not be helpful for the post-conviction hearing. Post-conviction counsel attempted to get contact information from Petitioner's family for another witness but was unable to do so and had no address for a subpoena.

The first witness for the Petitioner was his trial counsel. At the time of the trial, trial counsel had handled three or four first degree murder trials, including one capital case. During preparation, trial counsel visited Petitioner between ten and fifteen times. Trial counsel admitted that he had a "miscommunication and falling out" with Petitioner which prompted his motion to withdraw. Trial counsel expounded that Petitioner threatened him and that they almost got into a fight at the jail on one occasion. After having his recollection refreshed, trial counsel acknowledged that he told the trial court at the withdrawal hearing that he could not provide zealous representation to Petitioner at trial. Trial counsel stated that he would only make a motion to withdraw if he thought Petitioner "wouldn't get the representation that he deserved." Trial counsel also explained that he began having problems with Petitioner once Petitioner began changing his story to trial counsel. After the trial court denied the motion to withdraw, trial counsel and Petitioner continued to argue "a lot," but trial counsel continued to meet with Petitioner to prepare for trial. Trial counsel could not think of anything that he would have done differently at the trial. Trial counsel expressed his belief that he adequately represented Petitioner at trial "considering the facts of the case" because "[t]he facts were bad in this case . . . ." Trial counsel believed that he had effectively represented Petitioner at trial, but suggested that Petitioner may have benefitted from a different attorney.

On cross examination, trial counsel stated that he had been practicing law for twenty-nine years with five to ten trials per year. He stated that Petitioner gave a confession to police admitting to "firing 6 times." A co-defendant, who was being tried at the same time as Petitioner, also gave a confession. Trial counsel's strategy at Petitioner's trial was to go for a lesser-included offense conviction. Trial counsel stated that "even if I dislike my client, it doesn't have anything to do with my representation." Trial counsel opined that he tried to represent Petitioner as effectively as he could.

Petitioner next called his appellate counsel, who admitted reviewing all transcripts, including the motion to withdraw and the motion for new trial. Appellate counsel explained that he did not raise the withdrawal issue on appeal because he believed that it would deny Petitioner a full hearing on an ineffective assistance claim in a petition for post-conviction

relief, i.e., one issue could not be raised on direct appeal without raising the other.

Petitioner also testified at the evidentiary hearing. He denied ever threatening his trial counsel but admitted to cursing at him. Petitioner explained that his trial counsel did not meet with him to discuss trial strategy or a theme of the case. He claimed all communication between them was brief. Petitioner alleged that his trial counsel refused to impeach the testifying co-defendant with his criminal history and also failed to secure the testimony of several witnesses on Petitioner's behalf, who eventually testified for the State instead. Trial counsel also did not file a motion to dismiss for lack of prosecution, despite Petitioner's request to do so. When Petitioner confronted trial counsel about this on the morning of the trial, they got into an argument and trial counsel moved for withdrawal. Petitioner admitted that he had refused to work with trial counsel and asked trial counsel to withdraw because trial counsel indicated that Petitioner would likely be found guilty in any event. He did not feel that trial counsel prepared him for what happened during the trial process. He claimed he was young (nineteen yeas old at the time) and illiterate. Petitioner acknowledged filing a complaint with the Board of Professional Responsibility about trial counsel's inattention to his case. Petitioner stated that he asked his appellate counsel to raise the trial court's denial of the motion to withdraw, but appellate counsel did not.

After the hearing, the post-conviction court entered an order on November 18, 2013, denying post-conviction relief because Petitioner failed to prove the deficient performance and prejudice required to establish ineffective assistance. Petitioner was appointed new counsel for this appeal of the denial of post-conviction relief, which was timely filed.

*Analysis*

On appeal, Petitioner contends that he is entitled to post-conviction relief because (1) his trial counsel provided ineffective assistance by laboring under a conflict of interest and (2) his appellate counsel provided ineffective assistance by failing to argue on appeal that the trial court improperly denied trial counsel's motion to withdraw. Petitioner also asserts that the case should be remanded for a new post-conviction evidentiary hearing because his post-conviction counsel also provided ineffective assistance. The State disagrees.

To prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, this Court gives deference to the trial court's decision on questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence. *Fields v.*

*State*, 40 S.W.3d 450, 456 (Tenn. 2001) (citing *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997)).  This Court will not re-weigh or reevaluate the evidence presented below and is bound by the findings of the post-conviction court unless the evidence preponderates otherwise.  *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).  However, the post-conviction court's conclusions of law and application of the law to the facts are subject to de novo review with no presumption of correctness.  *Fields*, 40 S.W.3d at 457.

Petitioner alleges that he received ineffective assistance of counsel.  Both the Sixth Amendment to the Constitution of the United States and Article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel.  The test for ineffective assistance of counsel is a two-prong test: a petitioner "must show first that counsel's performance was deficient and second that the deficient performance prejudiced the defense."  *Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).  "Because a petitioner must establish both prongs . . . to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580.

The test for deficient performance is "whether counsel's assistance was reasonable considering all the circumstances."  *Strickland*, 466 U.S. at 688.  Counsel's performance is considered reasonable "if the advice given or the services rendered [were] within the range of competence demanded of attorneys in criminal cases."  *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)).  To be considered deficient, counsel's acts or omissions must fall below an objective standard of reasonableness under prevailing professional norms.  *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579.  However, this Court will not use hindsight to second guess counsel's tactical decisions unless the choices were uninformed because of inadequate preparation.  *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).  Prejudice is shown where "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

*A. Assistance of Trial Counsel*

Petitioner alleges that his trial counsel possessed an actual conflict of interest at the trial, thereby requiring a presumption of prejudice.  Petitioner contends that this conflict became evident at the withdrawal hearing when trial counsel admitted in open court that he was unable to provide zealous representation because of threats from Petitioner.  The State argues that trial counsel's statements during the withdrawal hearing did not automatically create or impute an improper conflict of interest that warrants a presumption of prejudice.

The State further argues that the post-conviction court accurately concluded that Petitioner failed to prove either deficiency or prejudice by clear and convincing evidence.

Usually a petitioner must affirmatively prove both deficiency and prejudice in ineffective assistance claims, as noted above, but there are limited instances that do not follow this general rule. A claim of ineffectiveness due to an alleged conflict of interest is one such occasion because prejudice will be presumed, but "only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 348 (1980)).

The right to effective assistance of counsel guaranteed by the Sixth Amendment to the Constitution of the United States and Article I, section 9 "contemplates that the services rendered by counsel shall be completely devoted to the interest of the accused." *State v. George Anthony Braddock*, No. M2012-01605-CCA-R3-PC, 2014 WL 546351, at *15 (Tenn. Crim. App. Feb. 11, 2014), *perm. app. denied* (Tenn. June 25, 2014) (citing *State v. Knight*, 770 S.W.2d 771, 775 (Tenn. Crim. App. 1988)); *see also State v. Thompson*, 768 S.W.2d 239, 245 (Tenn. 1989) (stating that "an accused is entitled to zealous representation by an attorney unfettered by a conflicting interest"). An actual conflict of interest exists when "an attorney cannot exercise his or her independent professional judgment free of compromising interests and loyalties." *State v. White*, 114 S.W.3d 469, 476 (Tenn. 2003) (internal quotation omitted). Any alleged conflict "must be actual and significant, not irrelevant or merely hypothetical." *Terrance B. Smith v. State*, No. W2004-02366-CCA-R3-PC, 2005 WL 2493475, at *5 (Tenn. Crim. App. Oct. 7, 2005), *perm. app. denied* (Tenn. Mar. 27, 2006) (internal quotation omitted).

Although ineffectiveness claims based on conflicts of interest often arise from an attorney's previous or simultaneous representation of other individuals, this Court has considered potential conflicts of interest arising from personal difficulties in the attorney-client relationship, which may challenge counsel's dedication to the cause of the defendant. *See, e.g.*, *Shaun Alexander Hodge v. State*, No. E2009-02508-CCA-R3-PC, 2011 WL 3793503 (Tenn. Crim. App. Aug. 26, 2011), *perm. app. denied* (Tenn. Feb. 15, 2012) (examining ineffectiveness claim based on conflict of interest where the defendant filed a Board of Professional Responsibility complaint against trial counsel and wrote several letters to the trial court); *State v. Nelson Troglin*, No. E2005-02015-CCA-R3-CD, 2006 WL 2633107, at *3 (Tenn. Crim. App. Sept. 14, 2006), *perm. app. denied* (Tenn. Jan. 29, 2007) (reviewing defendant-alleged conflict of interest based on animosity and distrust between him and counsel that caused ineffective assistance); *Steve Mason v. State*, No. M2002-00414-CCA-R3-PC, 2003 WL 22038785, at *7 (Tenn. Crim. App. Sept. 2, 2003) (looking at whether conflict of interest amounted to ineffective assistance of counsel where

counsel filed pre-trial motion to withdraw for lack of cooperation and dysfunctional working relationship).[5]

In his brief, "Petitioner submits that as soon as an attorney stands up in open court and admits that he or she does not have the zeal to represent the defendant, an actual conflict of interest is present." However, Petitioner has cited no authority for the proposition that an attorney's statements to the trial court during a withdrawal hearing can necessarily create an actual conflict of interest as a matter of law. This Court has previously stated that "an attorney's good faith assertion of his disqualification is not in itself ineffective representation." *Thompson*, 768 S.W.2d at 245. We conclude that trial counsel's representations to the trial court during the hearing did not create an actual conflict of interest.

We also note that the words "zeal" and "zealous" seem to have been used by trial counsel and Petitioner to connote subjective feeling or attitude. However, zealous representation does not require counsel's emotional enthusiasm but only vigilant and diligent pursuit of the client's interests. *See generally* Tenn. Sup. Ct. R. 8, Rule 1.3. Simply because representation may be lacking in zeal does not automatically equate to a conflict of any sort.

The post-conviction court found that Petitioner did not carry his burden of proving that an actual conflict of interest existed and we agree. Specifically, the post-conviction court found that "nothing in the post-conviction hearing indicated that [trial counsel] did not provide Petitioner with effective assistance and representation." After our review of the record, we conclude that the evidence does not preponderate against the ruling of the post-conviction court.[6]

## B. Assistance of Appellate Counsel

Petitioner claims that his appointed counsel on direct appeal provided ineffective assistance by not raising the issue of whether the trial court erred in denying trial counsel's motion to withdraw. The State responds that Petitioner has failed to carry his burden of proof

---

[5]*Cf. Mickens v. Taylor*, 535 U.S. 162, 174 (2002) (noting that the federal "Courts of Appeals . . . have applied [*Cuyler v.*] *Sullivan* unblinkingly to all kinds of alleged attorney ethical conflicts," including those "implicat[ing] counsel's personal or financial interests," but cautioning that "the language of [*Cuyler v.*] *Sullivan* itself does not clearly establish, or indeed even support, such expansive application").

[6]The post-conviction court, utilizing a traditional *Strickland* ineffectiveness analysis, also rejected Petitioner's claim that his trial counsel provided ineffective assistance for various additional alleged failings during his representation. However, none of these rulings were challenged on appeal. They are therefore abandoned.

on this issue.

A defendant has a right to effective representation both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). The test for ineffective assistance of counsel is the same for both trial and appellate counsel, under the *Strickland* standard set forth above. *Campbell v. State*, 904 S.W.2d 594, 596 (Tenn. 1995). Regarding claims of ineffective assistance by appellate counsel, our supreme court has provided:

> Appellate counsel are not constitutionally required to raise every conceivable issue on appeal. Indeed, experienced advocates have long emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues. The determination of which issues to raise on appeal is generally within appellate counsel's sound discretion. Therefore, appellate counsel's professional judgment with regard to which issues will best serve the appellant on appeal should be given considerable deference.

*Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004) (citations and internal quotations omitted).

When evaluating a claim of ineffectiveness for failure to raise an issue on appeal, "the reviewing court must determine the merits of the issue." *Id.* (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). A petitioner's ineffective assistance claim cannot succeed if the unraised issue in question is meritless. *Id.* at 887-88.

As previously acknowledged, it is well-established that an indigent criminal defendant is constitutionally entitled to appointed counsel that provides effective assistance. *Gideon v. Wainright*, 372 U.S. 335 (1963); *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Summarizing the law controlling the withdrawal or discharge of appointed counsel for a criminal defendant, our supreme court recently provided:

> Once appointed, counsel for an indigent criminal defendant should not seek to withdraw unless compelled to do so and only upon good cause. *Parton v. State*, [ ] 455 S.W.2d 645, 649-50 ([Tenn. Crim. App.] 1970); *see* Tenn. Code Ann. § 40-14-205 (2012). Grounds upon which a trial court may order substitution of counsel include when counsel's representation is ineffective, when the defendant and counsel have become embroiled in an irreconcilable conflict, or when there has been a complete breakdown in communication between counsel and the defendant. *State v. Gilmore*, 823 S.W.2d 566, 568-69 (Tenn. Crim. App. 1991).

A defendant's refusal to cooperate with counsel does not necessarily justify substitution of counsel. *State v. McClennon*, 669 S.W.2d 705, 707 (Tenn. Crim. App. 1984). As we have previously observed, although the United States Constitution and the Constitution of Tennessee guarantee an indigent criminal defendant the right to assistance of counsel, the right does not include counsel of choice, special rapport with counsel, confidence in counsel, or even a meaningful relationship with counsel. *State v. Carruthers*, 35 S.W.3d 516, 546 (Tenn. 2000); *see also Morris v. Slappy*, 461 U.S. 1, 13-14, [ ] (1983). The essential aim is to guarantee an effective advocate, not counsel preferred by the defendant. *State v. Carruthers*, 35 S.W.3d at 546 (citing *Wheat v. United States*, 486 U.S. 153, 159 [ ] (1988)).

*Mobley v. State*, 397 S.W.3d 70, 93 (Tenn. 2013).[7]

Considering this issue on direct appeal under an abuse of discretion standard, the reviewing court would have been able to reverse the denial of trial counsel's motion to withdraw only by finding "no substantial evidence to support the conclusion of the trial judge," *State v. Rubio*, 746 S.W.2d 732, 737 (Tenn. Crim. App. 1987), or that the trial court's decision was irrational or resulted from the application of an incorrect legal standard, *Frazier v. State*, 303 S.W.3d 674, 680 (Tenn. 2010). We conclude that there was substantial evidence to support the trial court's ruling based on the evidence presented at the withdrawal hearing.

Faced with the motion to withdraw on the morning of the trial, the trial court noted that trial counsel had been on the case for nearly two years without any previous mention of conflict by the attorney or the defendant. In fact, on the Friday prior to the hearing, both

---

[7]In *United States v. Barrow*, 287 F.3d 733, 738 (8th Cir. 2002), the court provided the following relevant rules:

When faced with a motion to appoint substitute counsel, the [trial] court must balance several factors, including "the need to ensure effective legal representation, the need to thwart abusive delay tactics, and the reality that a person accused of crime is often genuinely unhappy with an appointed counsel who is nonetheless doing a good job." *Hunter v. Delo*, 62 F.3d 271, 274 (8th Cir. 1995). The court must conduct an adequate inquiry into the nature and extent of an alleged breakdown in attorney-client communications. *Id.* at 275. The focus of the justifiable dissatisfaction inquiry is the adequacy of counsel in the adversarial process, not the accused's relationship with his attorney. *See Wheat v. United States*, 486 U.S. 153, 159 [ ] (1988). "Last minute requests to substitute defense counsel are not favored." *United States v. Klein*, 13 F.3d 1182, 1185 (8th Cir.), *cert. denied*, 512 U.S. 1226 [ ] (1994).

sides appeared before the court and represented that they were ready for trial. Trial counsel's exclusive grounds for the motion were that he had been cursed and threatened by Petitioner. Petitioner admitted to the cursing but denied threatening trial counsel. Petitioner stated several reasons for his discontent, one being that he had to file a complaint with the Board of Professional Responsibility for trial counsel to come see him. Petitioner also complained that trial counsel would not file a motion as requested and had not shown Petitioner all of the discovery. Trial counsel insisted that he had reviewed all materials and likewise provided all of them to Petitioner. When prodded by the court, Petitioner defiantly refused to cooperate with trial counsel at all.

While it was apparent that the relationship between Petitioner and trial counsel was strained, there was substantial evidence for the trial court to find that all strife stemmed from Petitioner's own unreasonable attitude and threatening conduct. This court has consistently held that conflict of a defendant's own creation does not necessitate new appointed counsel. In *McClennon*, 669 S.W.2d at 707, cited with approval by the supreme court in *Mobley*, the court reasoned:

> The fact that the defendant ch[ooses] not to cooperate with competent appointed counsel does not entitle him to the appointment of other counsel. The willful refusal of a defendant to cooperate with his attorney is not imputable to either the State or defense counsel. The State ha[s] fulfilled its constitutional obligation to the defendant by appointing counsel; the Constitution does not require that the court continue to appoint additional counsel until one is appointed with whom the defendant might elect to cooperate.

Furthermore, the trial court could reasonably have found that there was not enough evidence to establish that trial counsel, with whom the court was professionally familiar, was rendering ineffective assistance in preparation for trial or that the attorney-client relationship was irretrievably fraught with irreconcilable conflict or lack of communication, such that trial counsel could no longer provide Petitioner with professionally and constitutionally adequate representation. *Cf. Barrow*, 287 F.3d at 738 (finding no abuse of discretion where defendant made numerous motions for substitution of counsel, alleging inability to communicate effectively with counsel, counsel's withholding of discovery and information, and counsel's recommendation to accept plea offer). The *Barrow* court explained:

> Justifiable dissatisfaction includes an irreconcilable conflict or a complete breakdown in communication. But it does not include a defendant's frustration with counsel who does not share defendant's tactical opinions but continues to provide zealous representation. Thus, a defendant has no right to an

attorney who will docilely do as she is told or to a "meaningful relationship" with appointed counsel.

*Id.* at 738 (citations omitted).

Because this issue lacked much, if any, merit, we conclude that the post-conviction court's conclusion that the decision of appellate counsel not to raise this issue on direct appeal "was completely within the realm of trial strategy and well within the range of acceptable reasonable assistance." For the same reason, we conclude that Petitioner has not shown that he was prejudiced by this issue not being raised on direct appeal.

### C. Assistance of Post-Conviction Counsel

Petitioner also argues that he should receive a new post-conviction evidentiary hearing because his post-conviction counsel did not investigate or raise several issues at the evidentiary hearing and also because his post-conviction counsel did not adequately perform the obligations and responsibilities required by Tennessee Supreme Court Rule 28. Specifically, Petitioner alleges that post-conviction counsel failed to conduct a suppression hearing at the evidentiary hearing, failed to present helpful witnesses, and failed to raise additional instances of ineffective assistance by trial counsel. Regarding Rule 28, Petitioner argues that post-conviction counsel: (1) failed to diligently investigate and present all reasonable claims; (2) failed to file an amended petition or notice that none would be filed; and (3) did not file a certificate of counsel.[8] The State argues that post-conviction counsel did not provide less than the minimum standard of service and also that there is no legal authority for a second post-conviction hearing.

Petitioner acknowledges that he does not have a constitutional right to the effective assistance of post-conviction counsel. *Frazier*, 303 S.W.3d at 680. His right to post-conviction counsel is statutory only, pursuant to the Post-Conviction Procedure Act. T.C.A. § 40-30-107(b). The justification for this statutory right "is to afford a petitioner the full and fair consideration of all possible grounds for relief." *Frazier*, 303 S.W.3d at 680. In furtherance of this purpose, our supreme court requires a minimum standard of service for all post-conviction counsel. *Id.*; *see* Tenn. Sup. Ct. R. 28 § 6(C)(2)-(4).[9] However, these

---

[8]We note that Petitioner has been represented by several attorneys through the course of the post-conviction proceedings. Petitioner's retained counsel filed an amended petition and a certificate of counsel prior to being relieved and post-conviction counsel, toward whom Petitioner's claim of ineffective assistance is directed, being appointed.

[9]In pertinent part, Rule 28 § 6(C) states:

rules "do not provide any basis for relief from a conviction or sentence." *Frazier*, 303 S.W.3d at 681. "All that due process requires in the post-conviction setting is that the defendant have 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Stokes v. State*, 146 S.W.3d 56, 61 (2004) (quoting *House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995)). Specifically, a full and fair hearing only requires "the opportunity to present proof and argument on the petition for post-conviction relief." *Id.* at 714.

Petitioner has enjoyed the full extent of due process of law and assistance of post-conviction counsel. Post-conviction counsel ably pursued Petitioner's claims of ineffective assistance of trial and appellate counsel by way of testimonial proof and oral argument at the evidentiary hearing. Petitioner has provided us with no legal authority entitling him to a second post-conviction hearing for the alleged shortcomings of his post-conviction counsel because he is not entitled to effective representation beyond what he has already received. Our supreme court has expressly held that an allegation of ineffective assistance of post-conviction counsel "does not establish a legal excuse for failure to raise . . . issues in the initial proceeding." *House*, 911 S.W.2d at 712. Moreover, this Court has repeatedly held that violations of Rule 28 by post-conviction counsel do not warrant a second post-conviction

---

(2) Appointed or retained counsel shall be required to review the pro se petition, file an amended petition asserting other claims which petitioner arguably has or a written notice that no amended petition will be filed, interview relevant witnesses, including petitioner and prior counsel, and diligently investigate and present all reasonable claims.

(3) Appointed or retained counsel shall file the certificate of counsel set forth in the appendix within thirty (30) days of either being retained or appointed to represent petitioner, except for good cause shown.

(4) If retained counsel has prepared or assisted in preparing the initial petition and intends to represent petitioner, counsel shall sign the initial petition and shall file the certificate of counsel set forth in the appendix.

The certificate to be filed by post-conviction counsel states:

I have thoroughly investigated the possible constitutional violations alleged by petitioner, including all those in paragraph 16 of the form petition set forth in Appendix A and any other ground that petitioner may have for relief. I have discussed other possible constitutional grounds with petitioner. I have raised all non-frivolous constitutional grounds warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law which petitioner has. I am aware that any ground not raised shall be forever barred by application of Tenn. Code Ann. § 40-30-106(g), and have explained this to petitioner.

*Id.* at 28, app. C.

hearing. *See, e.g.*, *Anthony Boyland v. State*, No. W2013-01226-CCA-MR3-PC, 2014 WL 3818612, at *17 (Tenn. Crim. App. Aug. 4, 2014); *Jonathan Everett v. State*, No. W2013-02033-CCA-R3-PC, 2014 WL 3744498, at *6-7 (Tenn. Crim. App. July 28, 2014).[10]

*Conclusion*

Based on our review of the record and the applicable law, we conclude that Petitioner has not established that the post-conviction court erred in denying his petition for post-conviction relief on the grounds of ineffective assistance of trial and appellate counsel. We also conclude there is no merit in Petitioner's argument that he should be afforded a second post-conviction relief hearing for the alleged ineffectiveness of his post-conviction counsel. The ruling of the post-conviction court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE

---

[10]Petitioner's contention that "this Court has not ruled out the possibility of granting a petitioner a second post-conviction hearing when post-conviction counsel has failed to follow the requirements of Supreme Court Rule 28" has already been addressed by a panel of this Court. *See Jonathan Everett*, 2014 WL 3744498, at *7 ("Whatever the precedential value of [*Ronald Donnell Moore v. State*, W1999-02125-CCA-R3-PC, 2001 WL 792612 at *5 (Tenn. Crim. App. July 13, 2001)], it should not be read as a backdoor way of securing a second post-conviction hearing where an adequate opportunity to be heard has already been afforded."). We likewise acknowledge that there could conceivably be a situation where counsel's egregious violation(s) of Rule 28 might impermissibly violate the limited due process requirements for post-conviction proceedings so as to warrant a second post-conviction hearing; however, we reaffirm that there is no legal authority for the proposition that a Rule 28 violation, in itself, justifies another bite at the post-conviction apple. *See id.* at *6 (noting that "this court has never held that the failure of counsel to fully comply with Rule 28 justifies a new hearing").